UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| MELLISSA GIBSON, | |
| Plaintiff, | |
| v. | Case No. 4:23-CV-78 JD |
| FAMILY SERVICE DIVISION, et al., | |
| Defendants. | |

**OPINION AND ORDER**

The plaintiff, Mellissa Gibson, proceeding pro se, filed a civil complaint against several individuals and entities. The defendants have filed a series of motions to dismiss the claims against them which are now ripe for decision. (DE 38, 41, 44, 48.) For the following reasons the motions will be granted.

**A. Background**

Ms. Gibson and her husband Antonio Gibson initially filed a complaint against several defendants on September 12, 2023. (DE 1.) The defendants then filed a series of motions to dismiss the complaint. Prior to these motions becoming fully briefed, the Magistrate Judge presiding over this matter convened a telephonic conference with the parties and granted, without objection, leave for Ms. Gibson to file an amended complaint which contained only her claims. Ms. Gibson then filed an amended complaint which removed Mr. Gibson but was otherwise the same as the original complaint. Like the original complaint, the amended complaint names several defendants and contains a series of broad allegations against them for allegedly tortious and unconstitutional actions

by the Indiana Department of Child Services against Ms. Gibson and her family. (DE 37 at 2.) The full roster of defendants is as follows. First, the Indiana Department of Child Services[1] and several individual DCS employees; Michelle Seymour, Lori Tisson, Katlynn Kepler, Joyce Fasani, Shalonda Haskins, Sarah Atchison, and Britteny Morehouse-Braswell (hereinafter "DCS Defendants").[2] Next, Franciscan Health Lafayette[3] and its employee Heather Hamstra (hereinafter "Medical Defendants"). Lastly, an individual named in the complaint as "Brenda CASA", who has been identified as Brenda Gochenauer by her counsel and who serves as a Court Appointed Special Advocate[4] ("CASA"), and Mr. Michael Troemel who is a former attorney for Ms. Gibson.

Ms. Gibson generally alleges that DCS violated her rights under the First and Fourth Amendments to the United States Constitution, her parental rights, her rights to a medical provider of her choice, used her husband's disability against him, and used her mental health against her. (DE 37 at 4.) Specifically, she claims that on March 7, likely of 2023[5], DCS employee Lori Tisson illegally entered her home in violation of the Fourth

---

[1] While identified in the complaint as the "City of Lafayette Indiana Division of Family Services" (DE 37 at 1), there is no such agency and the true employer of the individuals Ms. Gibson associates with that agency are with the State's DCS with the Indiana Attorney General serving as their counsel. Further, the factual allegations of Ms. Gibson's complaint refer to "DCS of Lafayette, Indiana" (*Id.* at 2) which suggests she was referring to the State DCS officials operating in Lafayette as opposed to officials of the Lafayette municipal government.

[2] As needed, the Court will refer to the group of only individual DCS employees as "individual DCS defendants" or "DCS employee defendants." The phrase "DCS Defendants" will refer to both the agency and the individual defendants.

[3] Misidentified in the complaint as Lafayette Indiana Franciscan Health East.

[4] Ms. Gochenauer served in her role as a special advocate in several cases where Ms. Gibson was named as the respondent. (DE 39 at 2.)

[5] Ms. Gibson's complaint states this date as "March 7th, 2030" but this is clearly a typo, and the other dates in neighboring sentences refer to 2023.

Amendment. Then from March 9th to 27th, 2023, Tisson "bullied and [intimidated]" her into "doing what the prosecutor wanted." (*Id.* at 2.) On March 28th "DCS [intervened] with no jurisdiction." (*Id.*) On April 26th, 2023, Brittany Morehouse of DCS removed Ms. Gibson's newborn child under allegedly false pretenses, falsified and suppressed evidence at a court hearing, and then lied under oath in court. (*Id.*) On May 22, 2023, DCS allegedly kept Ms. Gibson's children under false pretenses and unidentified individuals affiliated with DCS falsified and suppressed evidence. (*Id.*) From March 28, 2023, until at least August 23, 2023, caseworker Michelle Seymore allegedly also falsified and suppressed evidence "to all service providers." (*Id.*) At unidentified times Ms. Symore allegedly intimidated Ms. Gibson and "took away [her] right to choose her own provider." (*Id.*) Also at unidentified times, Ms. Seymore and Ms. Gochenauer, the CASA, allegedly held Ms. Gibson's children for too long of a period and "used visitations as punishment" due to personal animus against Ms. Gibson. (*Id.*) Ms. Seymore's supervisor, Joyce Fasani, allegedly allowed Ms. Seymore to commit these acts in violation of state law and DCS policy. (*Id.*)

Ms. Gibson alleges that Franciscan violated her rights under the Health Insurance Portability and Accountability Act ("HIPAA"). (*Id.* at 4.) This allegedly occurred when Franciscan's employee, social worker Heather Hamstra, gave Ms. Gibson's medical history to DCS employee Britteny Morehouse without Ms. Gibson's permission on April 26, 2023. (*Id.*)

Ms. Gibson's allegations against Mr. Troemel are that he was "negligent, and verbally abusive" throughout the whole CPS[6] case. (*Id.* at 3.) Including being negligent on "every court hearing date" and "aggressive" during appointments. (*Id.*)

Ms. Gibson seeks punitive damages for "all the emotional stress and trauma" which these acts inflicted upon her and her family in the amount of $5,250,000.

The defendants have now filed motions to dismiss the claims against them either individually or in groups. (DE 39 (Brenda Gochenauer), DE 41 (Medical Defendants), DE 44 (Michael Troemel), and DE 48 (DCS Defendants)). This latest series of motions are identical in substance to the initial round filed against the original complaint. The motions principally argue that Ms. Gibson's complaint fails to state a claim under which relief can be granted, which is governed by Federal Rule of Civil Procedure 12(b)(6), but the Medical Defendants' motion also argues there is a lack of subject matter jurisdiction which is governed by Federal Rule of Civil Procedure 12(b)(1). The Court will address each motion in turn.

**B. Legal Standard**

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim

---

[6] The Court assumes Ms. Gibson is using CPS as an acronym for "Child Protective Services" and using it as an alternative to DCS, which is the formal name of the state agency.

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012).

However, a complaint must plead "'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Taha v. Int'l Bhd. Of Teamsters*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). It is not sufficient for a plaintiff to tender "'naked assertions' devoid of 'further factual enhancement.'" *Id.* (internal quotations and citations omitted). When considering the viability of a claim the court may reject "sheer speculation, bald assertions, and unsupported conclusory statements." *Id.* Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

"When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). Because this case challenges the factual circumstances of jurisdiction rather than solely the pleading of jurisdiction, "the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)

**C. Discussion**

The Court will address the arguments related to each motion to dismiss in turn but will first address a preliminary issue.

The preliminary issue is that in Ms. Gibson's response to the motions to dismiss, she attempts to constructively amend the complaint by adding a series of conclusory references to the Fourteenth Amendment, the "self determination act", the "disability act", "perjury", and federal criminal statutes for civil rights violations.[7] These are not legal provisions previously referenced in her amended complaint and suggest an intent to add the claims against the various defendants. This is not the proper way to amend a complaint. The plaintiff may not amend her complaint through the brief in opposition to a motion to dismiss. *Wooly v. Jackson Hewitt, Inc.*, 540 F. Supp. 2d 964, 972 (N.D. Ill. 2008) (citing *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989)). While pro se litigants such as Ms. Gibson are entitled to have their filings construed generously, they must still abide by the procedural rules of the federal courts. *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009). The Court will consequently disregard the novel claims against the defendants Ms. Gibson raises in her response to the motions to dismiss.

With that issue addressed, the Court will move on to address the merits of each motion to dismiss.

### *(1) The claims against Brenda Gochenauer will be dismissed*

---

[7] Ms. Gibson, as a private citizen, cannot sue another defendant under the authority of federal criminal laws such as 18 U.S.C. § 242 (deprivation of rights under color of law) as those laws do not contain a private right of action. *See Whitten v. Kijakazi*, No.23-CV-2403, 2023 WL 7016424, at *2 (S.D. Ill. Oct. 25, 2023). The civil cause of action, which can be brought by private parties, for deprivation of rights under color of state law is 42 U.S.C. § 1983.

6

The claims against Brenda Gochenauer will be dismissed for two reasons. First, Ms. Gibson has failed to articulate a claim on which relief can be granted given the limited factual content of the complaint. Second, Ms. Gochenauer is entitled to absolute immunity for acts during her service as a Court Appointed Special Advocate.

Regarding the first issue, Ms. Gibson's complaint fails to articulate a legally cognizable claim against Ms. Gochenauer. Ms. Gibson's allegations against Ms. Gochenauer are that Ms. Gochenauer (1) used visitations as a punishment due to personal animus, (2) intimidated Ms. Gibson and took away her right to choose her own provider, and (3) held her children away from her for too long a period of time. These allegations are generic and fail to describe any of the violations with essential factual details such as when they occurred, what specific actions Ms. Gochenauer actually took, and the context surrounding these actions. For example, Ms. Gibson does not identify what actions or communications from Ms. Gochenauer were allegedly intimidating, why they were intimidating, when they occurred, or how that intimidating behavior caused a legally redressable injury. Nor does Ms. Gibson identify how Ms. Gochenauer was in a position to affect which providers Ms. Gibson used, how she took actions to affect Ms. Gibson's choice, when she took those actions, and how those actions affect Ms. Gibson's choice such that it cause her a legally redressable injury.[8] As it stands, Ms. Gibson's allegations against Ms. Gochenauer are nothing more than "'an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Taha*, 947 F.3d at 469 (quoting *Iqbal*, 556 U.S. at 678). This is insufficient to survive a motion to dismiss. *Id.*

---

[8] It is worth noting Ms. Gibson does not explain what kind of "provider" she is talking about. From the context of the complaint the Court can infer it is some type of medical care provider, but forcing the Court to rely on inferences and speculation is not sufficient to state a legally cognizable claim.

Second, the allegations against Ms. Gochenauer turn on acts performed during her duties as a Court Appointed Special Advocate, and she is entitled to absolute immunity for those acts. Court Appointed Special Advocates are community volunteers who represent and protect the best interests of a child. Ind. Code § 31-9-2-28. Such advocates are immune to claims arising within the scope of their court-appointed duties. *Dircks v. Ind. Dep't of Child Servs.*, No. 1:21-CV-451, 2022 WL 742435, at *34 (S.D. Ind. Mar. 11, 2022) (citing *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009)). Ms. Gibson's claims against Ms. Gochenauer are somewhat unclear given their lack of factual detail, but can only reasonably be read to relate to Ms. Gochenauer's official duties as a special advocate. Ms. Gibson alleges Ms. Gochenauer, along with Ms. Seymore, an employee of DCS, used visitation privileges to punish Ms. Gibson based on personal animus and held her children against her for too long of a time. These statements clearly argue Ms. Gochenauer misused her power as a special advocate in advising the judge on how to assign custody of the children. Advocacy to the court in the course of her duties as a special advocate is immunized conduct. *See Dircks*, 2022 WL at *34 (finding the special advocate defendants were entitled to immunity for claims of allegedly not sufficiently advocating for parental visitation rights during the course of custody proceedings).

Upon its independent review, the Court cannot discern any alleged acts by Ms. Gochenauer in the complaint which fall outside her role as a special advocate. Consequently, all of the described conduct, performed in her role as a special advocate, is entitled to immunity and Ms. Gibson's claims against Ms. Gochenauer must be dismissed. Ms. Gibson does not meaningfully respond to the immunity argument in her response to the motion to dismiss. Instead, she offers a naked denial, asserting that "immunity does not fall within the context of the

law." (DE 54 at 1.) It is not entirely clear what this statement means.[9] More importantly, Ms. Gibson has provided no legal authority in support of her argument. This is insufficient to rebut Ms. Gochenauer's immunity argument which is grounded in legal authority. *See Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1062–63 (7th Cir. 2020) (arguments that are underdeveloped, cursory and lack supporting authority are waived); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failure to respond to an opponent's argument results in waiver).

Consequently, the Court will grant Ms. Gochenauer's motion to dismiss. (DE 38.)

### *(2) The claims against Michael Troemel will be dismissed*

Next, the Court turns to Mr. Troemel's motion to dismiss. Ms. Gibson has failed to articulate a legally cognizable claim against Mr. Troemel and the Court will accordingly grant his motion to dismiss.

Ms. Gibson fails to articulate sufficient facts to create a legally cognizable claim against Mr. Troemel. Ms. Gibson's allegations against him are that he: (1) was negligent on every court hearing date throughout her "whole cps case" and (2) he was verbally abusive and aggressive during appointments. (DE 37 at 3.) These allegations are generic and fail to describe any of the violations with essential factual details such as when they occurred, what specific actions Mr. Troemel actually took, or failed to take, and the context surrounding these actions. For example, Ms. Gibson has not identified or described the legal case in which Mr. Troemel represented her, what actions he took or did not take during the course of his representation, nor identified any of

---

[9] Ms. Gibson filed a single two-page response to all four of the motions to dismiss. The brevity of this response and the fact it is directed at four different sets of arguments are likely reasons why its application to specific arguments by the defendants in their motions is unclear.

9

the allegedly abusive comments he made. Like with her allegations against Ms. Gochenauer, Ms. Gibson's allegations against Mr. Troemel are nothing more than "'an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Taha*, 947 F.3d at 469 (quoting *Iqbal*, 556 U.S. at 678). Again, this is insufficient to survive a motion to dismiss. *Id.*

The Court would specifically note that Ms. Gibson does not allege facts which fulfill any of the elements of a claim for negligent representation by an attorney. Ms. Gibson's accusations are that Mr. Troemel was negligent in the course of representing her. The legal vehicle for redressing such negligence is a malpractice claim, which is governed by state law. *Duro, Inc. v. Walton*, 43 F.4th 648, 651 (7th Cir. 2022). To succeed on a legal malpractice claim under Indiana law, a plaintiff must establish four elements: (1) employment of the attorney and/or firm (duty), (2) failure of the attorney and/or firm to exercise ordinary skill and knowledge (breach), (3) proximate cause (causation), and (4) loss to the plaintiff (damages). *K.B. v. Fies*, No. 2:17-CV-474, 2021 WL 1784298, *10 (N.D. Ind. May 5, 2021) (citing *Gates v. O'Connor*, 111 N.E.3d 215, 223–24 (Ind. Ct. App. 2018). Ms. Gibson does not allege facts which would satisfy any of these four elements. In particular, she does not identify what matter Mr. Troemel represented her for, how he failed to exercise ordinary skill or knowledge in the course of his representation, or how that failure caused a loss to her.

Therefore Ms. Gibson cannot state a facially plausible claim for relief against Mr. Troemel and the Court is compelled to grant his motion to dismiss.[10] (DE 44.)

### (3) The claims against the Medical Defendants will be dismissed

---

[10] Ms. Gibson does not engage with any of Mr. Troemel's arguments in her response brief. As noted previously in this order, her response is a general document which primarily asserts new theories of liability against the defendants and nakedly denies her claims are invalid or blocked by immunity.

The Court will now turn to the claims involving the Medical Defendants. The Medical Defendants argues that Ms. Gibson has failed to establish subject matter jurisdiction for her claims against them and that she has failed to articulate a legally cognizable claim. Their motion to dismiss will be granted.

Ms. Gibson's principal allegations in her complaint turn on alleged violations of the Health Insurance Portability and Accountability Act ("HIPAA"). Specifically, alleging that Franciscan failed to provide adequate HIPAA training to staff, and failed to ensure staff compliance with HIPAA regulations (DE 37 at 2–4.) This series of claims can be readily dismissed because, as the Medical Defendants note, only the United States Secretary of Health and Human Services may enforce HIPAA. *Stewart v. Parkview Hospital*, 940 F.3d 1013, 1015 (7th Cir. 2019) ("Congress left enforcement for violations [of HIPAA's prohibitions] to the Department of Health and Human Services, not to private plaintiffs"). Consequently, the Court is compelled to dismiss Ms. Gibson's HIPAA claims.

Ms. Gibson also makes a somewhat more opaque allegation that Ms. Hamstra violated Ms. Gibson's "right to have my husband in the room as she spoke with me contributed to taking my right to breastfeed away and contributed with taking bonding time away from family and family moments and religious traditions. [*sic*]" (DE 37 at 4.)

The Medical Defendants construe this allegation as a medical malpractice claim and argue the Court lacks jurisdiction over such a claim under Indiana law. The Court concurs in this assessment. Ms. Hamstra serves Franciscan as a social worker and her interactions with Ms. Gibson were in the scope of that employment. The complaint can reasonably be understood to be

arguing that Ms. Hamstra was negligent as a care provider in her conduct which caused harm to Ms. Gibson and therefore is redressable through a malpractice claim.[11]

Medical malpractice claims are state law claims and federal courts are obligated to employ the relevant state law in adjudicating them. *See Dircks*, 2022 WL 742435, at *1. In Indiana, such claims are governed by the Medical Malpractice Act ("MMA"). *IncreMedical, LLC v. Kennedy*, 212 N.E.3d 220, 225 (Ind. Ct. App. 2023). The Act contains a broad definition of healthcare provider which includes individuals who are not doctors or nurses, but who were employees of a healthcare providing professional corporation, facility or institution and were acting in the course and scope of her employment. *Id.* at 227 (finding an athletic trainer to be covered by the MMA's catch-all provision, codified at Ind. Code § 34-18-2-14). A claim falls under the MMA when the "specific misconduct [at issue] arises naturally or predictably from the relationship between the healthcare provider and patient or from an opportunity provided by that relationship." *Martinez v. Oaklawn Psychiatric Ctr., Inc.*, 128 N.E.3d 549, 558 (Ind. Ct. App. 2019).

The Court concludes that Ms. Gibson's claims against Ms. Hamstra arise naturally from the relationship between Ms. Gibson and her healthcare provider, Franciscan. Ms. Hamstra is a social worker for Franciscan who was acting in the scope of her employment when the allegedly harmful actions took place. Her decision to speak with Ms. Gibson without Mr. Gibson present and her decision to contact DCS in April 2023, are both types of conduct which can be described

---

[11] Ms. Gibson's allegation that Ms. Hamstra violated her rights may be interpreted as suggesting she intended something besides a malpractice claim. But as the complaint is currently written it is unclear what that other claim might be, and the Court would be forced to speculate. This is because in Ms. Gibson's complaint she does not identify what rights were violated by the Medical Defendants or why those rights are legally protected. Even if the Court considered the new causes of action mentioned in the reply brief, which for the reasons previously stated it will not, the passing references to the Fourteenth Amendment, "self determination act," and "the disability act" would still not meaningfully inform the Court of what rights were allegedly violated and what law to apply.

as predictable professional judgment calls being made by a hospital social worker. Ms. Gibson's response does not dispute this point. Having settled that Ms. Hamstra's conduct at issue falls within the scope of the MMA, the next question is whether the MMA deprives the Court of jurisdiction.

The MMA generally requires that a potential plaintiff file a complaint with the Indiana Department of Insurance and a medical review panel issue a decision prior to initiating a medical malpractice lawsuit. *Kennedy*, 212 N.E.3d at 225. Absent completion of this process, a federal district court lacks jurisdiction to hear the malpractice claim. *Dircks*, 2021 WL 2701346, at *1 (citing *Hines v. Elkhart Gen. Hosp.*, 465 F. Supp. 421, 423-26 (N.D. Ind. 1979), *aff'd*, 603 F.2d 646 (7th Cir. 1979)). There is an exception to this requirement if the medical provider in question is not "qualified" under the MMA. *Id.* However, that exception is irrelevant in this case as Franciscan is a qualified provider under the MMA.[12] (DE 42 at 6.)

Ms. Gibson does not contest the fact she has not yet filed a complaint with the IDOI. As such, she is unable to initiate a malpractice lawsuit against the Medical Defendants and the Court lacks subject matter jurisdiction over any such claim. The Court will consequently grant the Medical Defendants' motion to dismiss based on a lack of jurisdiction over Ms. Gibson's medical malpractice claim and her failure to articulate any other legally cognizable claim against them.

---

[12] Ms. Gibson doesn't dispute counsel's assertion that Franciscan is a qualified provider. Further, district courts are entitled to consider outside "matters of public record without converting a motion for failure to state a claim into a motion for summary judgment" if they are "not subject to reasonable dispute and either generally known within territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." *Carter v. Sturgeon*, 643 F. Supp. 3d 862, 865 (N.D. Ind. 2022) (citing *General Elec. Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (1997)). The Indiana Patient's Compensation Fund website, maintained by the IDOI, is a sufficiently reliable source for the Court to take judicial notice and corroborate counsel's statement given the lack of dispute.

### *(4) The claims against DCS Defendants will be dismissed*

The Court lastly turns to the DCS Defendants' motion to dismiss. The motion will be granted for several reasons including a failure to articulate a claim upon which relief can be granted and DCS' immunity for certain conduct.

First, Ms. Gibson has failed to articulate sufficient facts to create a legally cognizable claim against the DCS Defendants. Ms. Gibson's allegations against the DCS Defendants are that: (1) "DCS of Lafayette, Indiana harassed me for the years of 2019, and 2020," (2) Ms. Tisson illegally entered her home, (3) DCS unlawfully removed her child from her custody, (4) DCS employees generally falsified and suppressed evidence during court proceedings, and (5) DCS held her children in its custody for too long. (DE 37 at 2, 4.) These allegations are fairly generic and often conclusory. While Ms. Gibson generally provides the dates of when events happened, she fails to provide essential factual details and context in which the actions occurred. For example, there is no context or description of Ms. Tisson's allegedly unlawful entry into Ms. Gibson's home, nor is there any description of the circumstances of her child allegedly being taken into DCS custody.

Additionally, while Ms. Gibson alleges her children were held outside of her custody for "too long" she does not identify how long they were out of her custody. Further, Ms. Gibson's assertion that on March 28th (presumably of 2023) "DCS intervened with no jurisdiction" and this caused emotional trauma to her family is too opaque to state a claim. Ms. Gibson does not describe what the intervention was, who was involved, where it took place, or how it specifically harmed her. Ultimately, Ms. Gibson's allegations against the DCS Defendants are too factually sparse to rise above the level of an unadorned accusation of wrongdoing and cannot survive a motion to dismiss under Rule 12(b)(6). *Taha*, 947 F.3d at 469 (quoting *Iqbal*, 556 U.S. at 678).

Second, Ms. Gibson's claims for damages against the Indiana DCS and its employees–in their official capacity–are barred by the Eleventh Amendment to the United States Constitution. The Eleventh Amendment generally bars any claim for damages against one of the several states in federal court unless the state has waived its immunity. U.S. Const. amend XI; *DuPage Reg'l Off. of Educ. v. United States Dep't of Educ.*, 58 F.4th 326, 338 (7th Cir. 2023). The immunity extends to entities considered to be "arms of the state" and the Indiana DCS is one such entity. *Hetherington v. Dep't of Child. Servs.*, No. 2:11-CV-62, 2012 WL 523712, at *3 (N.D. Ind. Fed. 14, 2012) (collecting cases). This immunity also extends to employees of DCS when they are sued in their official capacity. *Id.* (collecting cases.) Indiana has not waived its Eleventh Amendment immunity.

This immunity requires dismissal of Ms. Gibson's claims as her current allegations are against DCS itself and the DCS employees in their official capacity. Ms. Gibson does not meaningfully dispute the applicability of Eleventh Amendment immunity. Nor does Ms. Gibson contest the DCS employee defendants' classification of her suit against them as being in their official capacity. *See Stevens v. Umsted*, 131 F.3d 697, 707 (7th Cir. 1997) (explaining that a suit against a government official will be assumed to be against them in their official capacity unless that assumption is negated by party behavior or record evidence). Instead, she asserts, without any legal authority in support, that "immunity does not fall within the context of the law." (DE 54 at 1.) As previously discussed, it is not clear what this statement means and more importantly Ms. Gibson's failure to include supporting legal authority with the claim is fatal to any argument in this statement. *Shipley*, 947 F.3d at 1062–63 (arguments that are underdeveloped, cursory and lack supporting authority are waived); *Bonte*, 624 F.3d at 466 (failure to respond to an opponent's argument results in waiver).

It is worth noting that pursuant to the *Ex parte Young* doctrine, the Eleventh Amendment does not prevent a plaintiff from seeking prospective equitable relief, to cure ongoing violations of federal law, against a state official acting in their official capacity. *Ex parte Young*, 209 U.S. 123, 159–60 (1908); *Mattingly v. Marion Superior Court*, 667 F.Supp. 3d 946, 951 (S.D. Ind. 2023) (providing an overview of Eleventh Amendment and *Ex parte Young* interaction). But in this case Ms. Gibson is exclusively seeking monetary damages from the defendants and the *Ex parte Young* doctrine does not apply. The Court recognizes that Ms. Gibson's complaint mentions, in passing, a request for DCS to "[better] train new employees maintain training through-out career and hold employees accountable [sic]." (DE 37 at 3.) However, this brief comment lacks sufficient detail to indicate to the Court that Ms. Gibson is seeking prospective injunctive relief of an ongoing violation of federal law which might implicate *Ex parte Young*. As such the Court will exclusively address the claim for damages presented in the complaint and not consider any claims not properly presented.

Third, to the extent Ms. Gibson may have sought to bring state law tort claims[13] against the DCS employee defendants, those claims would also be barred by state statutory immunity. Indiana law immunizes DCS employees from personal civil liability for official acts done or omitted in connection with duties performed under Indiana Code Title 31. Ind. Code § 31-25-2-2.5. Ms. Gibson's allegations against the DCS employee defendants all relate to their investigation and assessments related to a DCS court proceeding involving her and her family. Conducting abuse investigations and making assessments of the individuals involved in such allegations are activities squarely encompassed within the DCS employee defendants' job duties

---

[13] Such as defamation. *See, e.g., Gracia v. SigmaTron Int'l, Inc.*, 986 F.3d 1058, 1062 (7th Cir. 2021) (noting defamation claims are governed by state law).

and thus fall within the scope of their employment. *Justice v. Justice*, 303 F. Supp. 3d 923, 944 (S.D. Ind. 2018).

The DCS Defendants raised two other issues in their motion to dismiss: absolute immunity for providing testimony and evidence in court and a lack of a cognizable Fourth Amendment claim. The Court need not decide these issues as the previously discussed three grounds are a sufficient basis to decide the motion.

Accordingly, the Court will grant the DCS Defendants' motion to dismiss.

### *(5) The Court will grant Ms. Gibson leave to amend her complaint*

It is the general practice of this Court, in accordance with guidance from the Seventh Circuit Court of Appeals, to afford a pro se plaintiff one opportunity to file an amended complaint when granting a motion to dismiss based on a failure to state a claim. *See Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018) (pro se plaintiffs should ordinarily be afforded leave to amend when their complaint is dismissed).

The Court recognizes the present circumstances are somewhat different than normal. Ms. Gibson had an opportunity to amend her complaint, *after* being apprised of the arguments the defendants would raise in their motions to dismiss and after being advised by the Magistrate Judge that it was also an opportunity to clarify her claims in light of the then pending motions to dismiss. Ms. Gibson then chose not to fully avail herself of the opportunity and chose to amend her complaint solely by removing her husband as a co-plaintiff.

Nonetheless, the Court will grant Ms. Gibson leave to file a second amended complaint. Ms. Gibson did not previously have the benefit of a dispositive ruling on the pending motions to dismiss even if she was generally aware of the issues they would raise. The Court finds that

granting Ms. Gibson one additional opportunity to amend her complaint is most consistent with the principle articulated in *Abu-Shawish*. Nonetheless, the Court cautions Ms. Gibson that any amended complaint should be drafted only after careful consideration of the rulings contained in this order. In particular, Ms. Gibson should not attempt to relitigate the immunity findings without citing to legal authority in support of her position.

### D. Conclusion

Accordingly, the motions to dismiss are GRANTED. (DE 38, 41, 44, 48.) The complaint is STRICKEN and Ms. Gibson is granted 30 days to file a second amended complaint. Any amended complaint should clearly articulate what actions were taken by each named defendant, and how those actions caused Ms. Gibson's injury, consistent with the analysis provided throughout this order. Further, to the extent possible, it should include specific details such as dates of the actions.

The Court CAUTIONS Ms. Gibson that failure to file an amended complaint could result in the dismissal of her claims, and case, without further notice. Further, this dismissal may be with prejudice. *See Griffin v. Milwaukee Cty.*, 369 Fed. App'x 741, 743 (7th Cir. 2010) (unpublished) ("A court is free to dismiss a complaint with prejudice when the plaintiffs have been given opportunities to amend, but fail to do so.").

SO ORDERED.

ENTERED: July 11, 2024

　　　　　　　　　　　　　　　　　　　/s/ JON E. DEGUILIO
　　　　　　　　　　　　　　　　　　Judge
　　　　　　　　　　　　　　　　　　United States District Court